per curiam:
Nos solicitan aquí la revocación de una sentencia emitida por el entonces Tribunal de Circuito de Apelaciones. En virtud de ésta, el foro intermedio apelativo revocó parcialmente una sentencia dictada por el Tribunal de Primera Instancia. Al hacerlo, eliminó una partida de $84,767 en concepto de pérdidas operacionales, que había sido concedida al allí peticionario por el Tribunal de Primera Instancia. Veamos los hechos que originan el recurso.
I
El Sr. Ángel M. Egozcue Rosario contrató los servicios del Sr. César Reyes Carrasquillo para que lo asesorara en la compra e instalación de ciertas plantas generadoras de electricidad para sus cuatro oficinas y su residencia.
*327 En marzo de 1997, el señor Reyes Carrasquillo realizó un estudio con el propósito de determinar las necesidades particulares de cada una de las oficinas y de la residencia del señor Egozcue Rosario. Concluido dicho estudio, le recomendó la compra de cinco plantas generadoras de electricidad. Dichas plantas eléctricas fueron adquiridas por el señor Egozcue Rosario en Bella Internacional por $29,989. Adquirió, además, cinco interruptores (transfer switches) por $7,500.
El señor Reyes Carrasquillo sometió una propuesta adicional para proveer, entre otros servicios, la instalación de los equipos antes mencionados en las oficinas y la casa del señor Egozcue Rosario. Las referidas plantas no fueron instaladas adecuadamente ni pudieron suplir los requerimientos energéticos de los lugares en los que habían sido instaladas. Ante ello, Reyes Carrasquillo se comprometió a corregir las instalaciones defectuosas entre febrero a mayo de 1998, lo cual incumplió.
El huracán Georges azotó a Puerto Rico el 21 de septiembre de 1998 y el país sufrió una interrupción general del servicio eléctrico. Debido a que las plantas eléctricas habían sido mal instaladas, éstas no cumplieron su función durante dicho periodo.
El 19 de abril de 2000, el señor Egozcue Rosario presentó una demanda por incumplimiento de contrato y daños contra el señor Reyes Carrasquillo, su esposa y la Sociedad Legal de Gananciales compuesta por ambos. Sostuvo que Reyes Carrasquillo instaló los equipos de forma negligente y en crasa violación de las recomendaciones del fabricante de las plantas generadoras. Destacó que los equipos no eran capaces de suplir la demanda energética de las oficinas y de su hogar. Reclamó, como consecuencia del alegado incumplimiento, la suma de $29,989 en concepto de la compra y adquisición de plantas generadoras de electricidad no adecuadas; $7,500 por la compra y adquisición de interruptores de emergencia; $11,000 en *328 concepto de los servicios profesionales satisfechos al señor Reyes Carrasquillo; $100,000 en concepto de pérdidas operacionales y de ingresos; $75,000 en concepto de la adquisición de las las plantas generadoras adecuadas y su correspondiente instalación, y $50,000 en concepto de angustias y sufrimientos mentales y emocionales.(1)
Reyes Carrasquillo contestó la demanda y reconvino. Sostuvo que prestó los servicios por los cuales fue contratado al demandante de autos y que éste le adeudaba $9,000. Argüyó, además, haberle prestado servicios adicionales a los contratados y que el señor Egozcue Rosario se había negado a pagar por éstos. Reclamó $100,000 en concepto de daños emocionales y angustias mentales. Fundamentó su reclamo en que durante la relación habida con el señor Egozcue Rosario, éste lo humilló y le hirió su dignidad, le exigía “como si fuera un ser superior por el mero hecho de contar con un título de abogado”. Añadió que constantemente lo amenazaba, ya que “él sí sabía de leyes”, y que las cosas se tenían que hacer a su manera.(2)
El 28 agosto de 2001 el Tribunal de Primera Instancia dictó sentencia, declarando “con lugar” la demanda incoada. Condenó a los demandados de autos el pago de $29,989 por la compra de las plantas generadoras de electricidad que resultaron ser inadecuadas; $7,500 por la compra de los interruptores de emergencia; $11,000 por servicios profesionales pagados a Reyes Carrasquillo, y $84,767 por pérdidas operacionales y de ingresos. Impuso, además, el pago de costas, gastos y honorarios de abogado. Denegó, sin embargo, la partida de $75,000 reclamada por concepto del costo estimado del nuevo equipo necesario para reemplazar el equipo inadecuado, por entender que no era un daño o gasto atribuible a la conducta del demandado de autos.(3)
*329 Insatisfechos, los demandados de autos acudieron al entonces Tribunal de Circuito de Apelaciones mediante un recurso de apelación presentado el 9 de noviembre de 2001. Entre los señalamientos de error ante dicho foro, plantearon la improcedencia de la partida de $84,767 concedida al demandante de autos en concepto de pérdidas operacionales y de ingresos. Argüyeron que ante el foro primario no se presentó prueba documental o demostrativa alguna para establecer la referida partida. En este caso, mediante su escrito de apelación, el señor Reyes Carrasquillo planteó que actuó incorrectamente el foro primario al conceder daños por pérdidas operacionales y de ingresos por $84,767 al señor Egozcue Rosario, fundamentándose exclusivamente en el testimonio del apelado. Reconoció que aunque los daños en concepto de pérdidas operaciones o pérdida de ingreso no se tienen que demostrar con certeza absoluta ni matemática, debe haber una base razonable que permita realizar una determinación prudente, que no sea una especulación ni una conjetura.(4) Sostuvo que el allí apelado exageró en su demanda con relación a la partida en concepto de pérdidas operacionales y de ingresos, y que su testimonio no ofreció base alguna para sostener la partida concedida por dicho concepto.(5)
El 7 de diciembre de 2001, los entonces apelantes presentaron ante el Tribunal de Apelaciones un “Proyecto de exposición narrativa de la prueba oral, a tenor con la Regla 19 del Tribunal de Circuito de Apelaciones”.(6) El 27 de diciembre de 2001, el apelado presentó la correspondiente “Réplica al proyecto de exposición narrativa de la prueba oral” presentada por los apelantes.(7)
*330 El 11 de enero de 2002, el foro intermedio apelativo ordenó a los abogados de las partes a reunirse o conversar para discutir las discrepancias respecto a la exposición narrativa de la prueba oral, con miras a presentar una exposición narrativa de la prueba oral estipulada. Puntualizó en su resolución que si luego de haberse reunido las partes, no lograban una exposición narrativa de la prueba oral estipulada, “la parte demandante [sic] deberá informarlo inmediatamente para remitir el asunto al Tribunal de Primera Instancia para que se lleve a cabo el trámite dispuesto por ley y se impongan las sanciones correspondientes a la parte que hubiese obstaculizado o demorado el proceso de aprobación de la exposición narrativa de la prueba”.(8)
En cumplimiento con la referida orden, el 19 de febrero de 2002, las partes presentaron una “Moción consignando exposición narrativa de la prueba oral”.(9) El 26 de noviembre de 2003, el foro intermedio apelativo emitió una sentencia modificando el dictamen del foro primario. Específicamente, redujo de $11,000 a $9,000 la partida correspondiente a los honorarios que el apelante debía pa-gar al apelado y eliminó la partida de $84,767 correspondiente a las pérdidas operacionales y de ingresos. Respecto a esta última partida, entendió que no había base en la prueba presentada para sostener la conclusión de que el señor Egozcue Rosario sufrió pérdidas en su negocio ascendentes a $84,767. Puntualizó que, por tratarse de un recurso de apelación sometido con una exposición narrativa de la prueba oral estipulada por ambas partes, su función revisora estaba enmarcada y limitada por lo que surjía de ella. Señaló que la exposición de la prueba oral estipulada por las partes no contenía referencia alguna a lo que Egozcue Rosario declaró en el juicio con respecto a las pérdidas *331 de su negocio. Añadió que no se admitió en juicio prueba documental alguna referente a la partida especial de pérdida de ingresos y que la única prueba al respecto la aportó el testimonio vertido en el juicio por el demandante señor Egozcue Rosario. Puntualizó que si, en efecto, el señor Egozcue Rosario testificó durante el juicio, debió asegurarse de que la exposición narrativa de la prueba oral que estipuló con el apelante era correcta y completa.(10)
Insatisfecho, Egozcue Rosario acudió ante nos mediante un recurso de certiorari, y señaló los errores siguientes:
ERR[Ó] EL TRIBUNAL DE APELACIONES AL ELIMINAR LA PARTIDA DE P[É]RDIDAS OPERACIONALES A PESAR DE QUE LA PARTE DEMANDADA ESTIPUL [Ó] EL CONTE-NIDO DE TESTIMONIO Y EL HECHO DE [QUE] EL TES-TIMONIO NO FUE REBATIDO DE FORMA ALGUNA. ERR[Ó] EL TRIBUNAL DE APELACIONES AL ELIMINAR LA PARTIDA DE DAÑOS POR PÉRDIDAS OPERACIONA-LES UTILIZANDO COMO FUNDAMENTO QUE EL TESTI-MONIO DEL RECURRENTE ES INSUFICIENTE EN DERE-CHO PARA PROBAR LA CONCESI[Ó]N DE LAS MISMAS Y AL ENTRAR EN CONSIDERACIONES DE CREDIBILIDAD DEL TESTIGO. Petición de certiorari, pág. 5.
Examinadas las comparecencias de las partes y los autos, nos encontramos en posición de resolver.
II
Por estar relacionados discutiremos conjuntamente ambos señalamientos de error.
La Regla 16 del Reglamento del Tribunal de Apelaciones, entonces vigente, disponía que cuando la parte apelante haya señalado algún error relacionado con la suficiencia de la prueba testifical o con la apreciación errónea de ésta por parte del tribunal apelado, se procederá con *332 forme disponen las Reglas 19, 20 y 76, según corresponda.(11)
. En específico, la Regla 19(12) del referido cuerpo reglamentario disponía lo siguiente:
Cuando la parte apelante haya señalado algún error relacionado con la suficiencia de la prueba testifical o con la apreciación errónea de ésta por parte del tribunal apelado, discutirá dicho error en su escrito inicial, en forma preliminar, de acuerdo con la información y el recuerdo que tenga sobre dicha prueba.
Dentro de los treinta (30) días siguientes a la presentación de la apelación, la parte apelante preparará y someterá al Tribunal de Circuito de Apelaciones un proyecto de exposición narrativa de la prueba oral pertinente al recurso, con una moción en la que justificará la necesidad de que el Tribunal considere la prueba oral para la adecuada disposición del recurso. Notificará copia de la moción y del proyecto de exposición narrativa a la parte apelada.
Durante los veinte (20) días siguientes, las partes harán esfuerzos, mediante comunicaciones y reuniones entre ellos, para lograr una exposición estipulada, tomando como base el proyecto de exposición narrativa de la parte apelante.
Si transcurridos dichos veinte (20) días no se produce una exposición estipulada, la parte apelada presentará su oposición a la moción y al proyecto de estipulación de la parte apelante, en la cual señalará específicamente y en detalle, con referencia a la prueba presentada, sus objeciones al proyecto de la parte apelante y las razones que le impiden llegar a una exposición narrativa estipulada. De lo contrario se podrá to-mar el proyecto de la parte apelante como exposición narrativa de la prueba testifical.
Con vista a la moción y al proyecto de la parte apelante y a la oposición de la parte apelada, el Tribunal de Circuito de Apelaciones podrá:
(a) Ordenar a las [sic] partes que se reúnan nuevamente para tratar de lograr una exposición narrativa estipulada, o
(b) celebrar una vista ante el Tribunal de Circuito de Apelaciones, o por delegación, ante cualquier juez del panel co *333 rrespondiente, a los fines de auscultar la posibilidad de que las partes armonicen o minimicen sus diferencias en cuanto a la exposición narrativa de la prueba.
(c) Ordenar a la parte apelante que, conforme a la Regla 20 de este apéndice, proceda a obtener la aprobación del tribunal apelado respecto a la exposición narrativa o a cualquier porción de ella sobre la cual no haya habido acuerdo; lo que signe es “(d)” y no la palabra ordena [sic].
(d) Ordenar la preparación total o parcial de una transcripción de la prueba oral, conforme a la Regla 76 de este apéndice.
El Tribunal de Circuito de Apelaciones podrá imponer costas y sanciones a la parte o a su abogado(a) de determinar que obstaculizaron el logro de una exposición estipulada de la prueba y ocasionaron retraso en cuanto a la solución del recurso. Asimismo, podrá imponer sanciones a cualquier parte o a su abogado(a) en los casos en que intencionalmente se le haya hecho una representación incorrecta al Tribunal de Circuito de Apelaciones sobre el contenido de la prueba testifical.
Conforme surge de la referida disposición reglamentaria, cuando se trate de un error relacionado con la suficiencia de la prueba testifical o con la apreciación errónea de ésta por parte del tribunal apelado, existen tres mecanismos que permiten al foro intermedio apelativo es-tar en condiciones de resolver el referido señalamiento de error: mediante la exposición estipulada de la prueba, la exposición narrativa de la prueba o la trascripción de la prueba oral.
Así, cuando una de las partes ha señalado algún error relacionado con la suficiencia de la prueba testifical o con la apreciación de la prueba por parte del Tribunal de Primera Instancia, el foro intermedio apelativo, en aras de cumplir a cabalidad su función revisora, debe ordenar una exposición narrativa de la prueba, en ausencia de una estipulada, u ordenar la transcripción total o parcial de la evidencia desfilada ante el Tribunal de Primera Instancia.(13)
*334 Sin embargo, si las partes llegan a un acuerdo sobre la exposición narrativa de la prueba (exposición estipulada de la prueba), así lo notificarán al tribunal y ésta se convertirá en la exposición de la prueba testifical estipulada, en virtud de la cual se evaluará el error señalado.(14)
Por ello,
[e]l abogado jamás debe olvidar que la exposición narrativa de la prueba oral debe ser un relato sobrio, objetivo, lo más fiel y exacto posible al verdadero testimonio vertido en el juicio. Los jueces de apelaciones no estuvieron en el juicio, y de ordinario, tampoco escuchan su grabación. Por lo tanto, confían en que la exposición narrativa de la prueba oral es correcta y que no quita ni añade elementos de prueba que no hayan sido los verdaderamente presentados en el juicio. Las determinaciones de hechos que el tribunal de apelaciones incorpora a su sentencia son las que surgen de tales exposiciones narrativas. (Énfasis suplido.(15)
Con el propósito de que el foro intermedio apelativo evaluara su reclamo de insuficiencia de la prueba, y en virtud de la orden emitida por el entonces Tribunal de Circuito de Apelaciones, este recurso de apelación se sometió a base de una exposición narrativa de la prueba oral estipulada por ambas partes.
De la referida exposición narrativa estipulada se colige, respecto al testimonio de Egozcue acerca de las pérdidas operacionales y de ingresos sufridas por éste, lo siguiente:
Declaró el demandante que para el 21 de septiembre de 1998 azotó el Huracán Georges por lo que se fue el servicio eléctrico en todas sus oficinas. Dijo que las plantas no funcionaron y a pesar de varias llamadas al demandado, este tardó varios días en contestar. Testificó que por el tiempo que no pudo operar sufrió pérdidas ascendentes a $84,767.
El Sr. Egozcue no fue rebatido de forma alguna, y sobre este *335 aspecto no fue contrainterrogado por la parte apelante. A pesar de la objeci[ó]n de la parte apelante, el tribunal a quo admitifó] el testimonio sobre pérdidas operacionales por ser Contador Público autorizado al [sic] apelado. Alegato de la parte recurrente, pág. 12.
En ningún otro lugar de la exposición narrativa estipulada se hace referencia al tema de las pérdidas que el allí apelado alegó haber sufrido. Ello a pesar de que el señor Egozcue Rosario sabía que se cuestionaba ante el referido foro si su testimonio era suficiente para sostener la partida concedida en concepto de pérdidas operacionales y de ingresos.
Arguye ante nos el señor Egozcue Rosario que, en su alegato ante el entonces Tribunal de Circuito de Apelaciones, sostuvo que mediante su testimonio “comparó sus ingresos mensuales en la oficina antes y después del accidente, se estableció el término por el cual ocurrieron dichas pérdidas y se estableció la suma de la disminución de los ingresos de éste”.(16) Sin embargo, en la exposición narrativa estipulada nada se expresó respecto a ello. El alegato no constituye parte de lo que se estipuló como exposición narrativa.
Sostiene que lo expresado por él en su testimonio respecto a la forma en que se determinó la cuantía, huelga, si las propias partes estipularon el hecho de que dicho testimonio nunca fue controvertido.(17) Una cosa no tiene que ver con la otra.
No hay controversia respecto al hecho de que no se admitió en juicio prueba documental alguna referente a la partida especial de pérdidas operacionales y de ingresos, y que la única prueba al respecto consistió en el testimonio vertido en juicio por el señor Egozcue Rosario. La contro *336 versia ante el Tribunal de Circuito de Apelaciones era si dicho testimonio era suficiente para conceder la referida partida. Entendemos, por lo tanto, que correspondía al señor Egozcue asegurarse de que la exposición narrativa estipulada era correcta y completa. Es decir, le correspondía poner en posición al entonces Tribunal de Circuito de Apelaciones de decidir que su testimonio era base suficiente para apoyar la conclusión del foro primario de que la conducta del señor Reyes Carrasquillo le produjo pérdidas operacionales y de ingresos ascendentes a $84,767. No lo hizo.
Adviértase que la exposición narrativa de la prueba debe ser un relato lo más fiel y exacto posible al verdadero testimonio vertido en el juicio y que las determinaciones de hechos que el Tribunal de Apelaciones incorpora en su sentencia son las que surgen de tales exposiciones narrativas.(18) Por ello, si las partes llegan a un acuerdo sobre la exposición narrativa de la prueba, el foro intermedio apelativo discutirá el error pertinente en virtud de lo que ésta contenga.(19)
Concluimos que actuó correctamente el foro intermedio apelativo al determinar que no había en el expediente de apelación base evidenciaría en la cual apoyar la conclusión del foro primario de que el incumplimiento del señor Reyes Carrasquillo le produjo al señor Egozcue Rosario pérdidas operacionales y de ingresos por $84,767. Se trata, por lo tanto, de un caso de insuficiencia de la prueba, no de apreciación errónea de ésta. El foro intermedio apelativo no intervino con la credibilidad del testimonio en juicio del señor Egozcue Rosario. No se cometieron los errores alegados.
*337 III
Por los fundamentos antes expuestos, se confirma la sentencia recurrida emitida por el Tribunal de Apelaciones.
La Juez Asociada Señora Rodríguez Rodríguez concurrió sin opinión escrita. Los Jueces Asociados Señores Rebollo López y Fuster Berlingeri no intervinieron.

 Demanda, Apéndice de la Petición de certiorari, págs. 66-70.

 Apéndice de la Petición de certiorari, págs. 71-74.

 Id., págs. 120-128. El foro primario puntualizó en su sentencia que aunque el demandante de autos reclamó una partida de $100,000 en concepto de pérdidas *329 operacionales y de ingresos, declaró en juicio haber tenido pérdidas montantes a $84,767 por el tiempo en que sus oficinas no operaron. Id., pág. 124 esc. 1.

 Apéndice de la Petición de certiorari, pág. 59.

B) íd.

 íd., págs. 129-134.

 íd., págs. 153-166.

 íd., págs. 168-169.

 íd., págs. 170-176.

 íd., págs. 1-34.

 4 L.P.R.A. Ap. XXII-A.

 4 L.RR.A. Ap. XXII-A. La referida disposición reglamentaria resalta la preferencia de una exposición estipulada de la prueba a una exposición narrativa. Véanse: Srio. del Trabajo v. Puig Abraham, 158 D.P.R. 263 (2002); R. Hernández Colón, Práctica jurídica de Puerto Rico: derecho procesal civil, San Juan, Ed. Michie, 1997, pág. 363.

 Hernández v. San Lorenzo Const., 153 D.P.R. 405, 421—422 (2001).

 Véase R. Hernández Colón, op. cit, pág. 364.

 H.A. Sánchez Martínez, Práctica jurídica de Puerto Rico: derecho procesal apelativo, San Juan, Ed. Lexis-Nexis de Puerto Rico, 2001, See. 4403, pág. 678.

 Alegato del señor Egozcue Rosario, pág. 13.

 íd.

 Sánchez Martínez, op. cit., pág. 678.

 Hernández Colón, op. cit., pág. 364.